**KATZMELINGER**
370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

Katherine Morales
Katz Melinger PLLC

t: 212.460.0047
f: 212.428.6811
kymorales@katzmelinger.com

January 17, 2025

**VIA ECF**
Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 2550
New York, New York 10007

Re:    *De La Cruz et al v. Salcedo Cargo Express Inc. et al*
       Civil Action No. 1:23-cv-03716-CM

Your Honor:

        We are counsel for the plaintiffs, Gregorio De La Cruz and Raul Marte, in this action and write jointly with counsel for the defendants, Salcedo Cargo Express, Inc. and Margitt Canaan (collectively, "Defendants"), to seek approval of the parties' agreement to settle Plaintiffs' claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL"); unpaid minimum wages under the FLSA and NYLL; unpaid spread of hour wages, failure to timely pay wages, and failure to provide payroll notices and wage statements under NYLL; and fraudulent filing of information returns under 26 U.S.C. § 7434.

        The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is submitted herewith as **Exhibit A**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**Plaintiffs' Claims**

        Plaintiffs worked for Defendants as drivers. De la Cruz worked for Defendants from in or around January 2010 until on or around May 19, 2021, while Marte worked for Defendants as a driver from in or around January 2018 until in or around January 2021. Plaintiffs' job duties included, *inter alia*, loading and unloading packages from trucks, receiving and organizing merchandise, and delivering packages and merchandise.

Honorable Colleen McMahon
January 17, 2025
Page 2

Throughout their employment, Plaintiffs regularly worked six (6) days per week, as follows: Mondays through Saturdays, from approximately 8:30 a.m. to approximately 6:30 p.m., without any meal or rest breaks, for a total of approximately sixty (60) hours worked per week. Throughout their employment, Defendants required Plaintiffs to use a fingerprint system to track the beginning of their shifts but Defendants did not allow Plaintiffs to use the system to record the end of his shifts. Moreover, in order for Plaintiffs to receive their wages, Plaintiffs were required to sign a document, which stated that Plaintiffs worked less than forty (40) hours per week even though Defendants were well-aware that Plaintiffs worked more than forty (40) hours in every given week.

From in or around January 2014 until in or around December 2020, Defendants compensated De La Cruz at a fixed rate of $350.00 per week. From in or around January 2021 until on or around May 19, 2021, Defendants compensated De La Cruz at a fixed rate of $450.00 per week. Similarly, throughout Marte's employment, Defendants compensated him at a fixed rate of $450.00 per week. Plaintiffs further claim that throughout their employment, Defendants provided their wages partially by check and partially in cash; and that Defendants issued and filed Internal Revenue Service ("IRS") W-2 Forms to them that only reflected the wages that Defendants paid to Plaintiffs by check. As a result, Plaintiffs claim that Defendants violated 26 U.S.C. § 7434 by filing fraudulent information returns for De La Cruz for the tax years 2010 through 2021 and for Marte for the tax years 2018 through 2021.

## Defendants' Defenses

Defendants claim that Plaintiff did not work the hours alleged. In fact, Defendants have detailed employment and payroll records that show the hours that the Plaintiffs worked and signature pages acknowledging these hours. These payroll records indicate that the Plaintiffs rarely worked over 40 hours per week, and when they did they were compensated legally.

Defendants believe they have significant defenses to these claims. Based on the cost of defense and the obvious risk of a trial, Defendants have agreed to the settlement terms.

The parties engaged in extensive settlement negotiations in this matter, including Court-annexed mediation, and ultimately agreed to settle Plaintiffs' claims for a total of $125,000.00.[1] The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

---

[1] The settlement amount of $125,000 will be paid by Defendants via one (1) initial payment of $17,000 and thirty-six (36) monthly payments of $3,000 per month.

Honorable Colleen McMahon
January 17, 2025
Page 3

## The Proposed Settlement Should Be Approved

### 1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiffs' FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching.

Here, there is no doubt that the settlement did not come about because of overreaching by Defendants. To the contrary, Plaintiffs are represented by competent counsel and the settlement was reached after extensive negotiations between the parties, including Court-annexed mediation. Moreover, the settlement amount, $125,000.00, results in a net recovery to Plaintiffs, after expenses and attorneys' fees, of $82,914.00. This sum is fair and reasonable given the amount of compensatory damages Plaintiffs are seeking in this matter compared with the risk that Plaintiffs would not be awarded all of the damages they seek after a trial, or would not be able to recover from Defendants should Plaintiffs be awarded a substantial judgment. Moreover, the parties' settlement agreement is devoid of any provisions that would frustrate the implementation of the FLSA. Specifically, the proposed agreement does not contain a confidentiality provision and Plaintiffs' release of claims is limited to the wage and hour claims asserted in the instant action.

### 2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by experienced wage-and-hour counsel following extensive settlement discussions. Plaintiffs and Defendants hold opposing views on the merit and value of Plaintiffs' claims; however, the arm's length bargaining between the represented parties, along with the information exchanged prior to and during mediation, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.,* *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiffs are no longer employed by Defendants, coercion is unlikely. *See, e.g.,* *Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiffs' alleged injuries will not recur as Plaintiffs are no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will

only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

### 3. Plaintiffs' counsels' fees are reasonable

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiffs. *See Wolinsky*, 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiff's counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiff's counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiffs' counsel over Plaintiff.

Under the proposed agreement, Plaintiffs' counsel would recover $629.00 as reimbursement for costs and expenses[2] and $41,457.00 in fees. Under Plaintiffs' contingency fee agreement, Plaintiffs' counsel is entitled to recover, out of Plaintiffs' settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiffs after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at \*25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at \*4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to Plaintiffs' retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102, at \*9-10 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiffs' counsel's time records, attached hereto as **Exhibit B**, Plaintiffs' counsel has spent a total of 136.20 hours on this matter as follows: Kenneth Katz, 6 hours; Nicole Grunfeld, .5 hours; Katherine Morales, 64.7 hours; Eliseo Cabrera, 23.2 hours; Jonathan Trinidad-Lira, 32.9 hours; and Vanessa Ueoka, 8.9 hours. Plaintiffs' counsels' hourly rates - $575.00, $525.00, $375.00, $350.00, $325.00, and $300.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See e.g., Brown v. City of New York*, 2020 WL 6075524, at \*4 (S.D.N.Y. Oct. 15, 2020) (approving rates up to $550 per hour for partners and collecting cases).

Mr. Katz is the founding member and managing partner of Katz Melinger PLLC, a boutique firm established in 2012. Mr. Katz earned his B.S. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to the Bar of

---

[2] Plaintiffs' costs and expenses are as follows: $402.00 for the initial filing fee and $227.00 for service of process, for a total of $629.00 in costs and expenses.

the state of New York in 2004 and New Jersey in 2016, and his practice is focused primarily on litigation, with substantial experience handling wage and hour matters.

Nicole Grunfeld is a partner at the Firm. Ms. Grunfeld earned her B.A. from Yale University in 1998 and her J.D. from New York University School of Law in 2004, where she was an Articles Selection Editor for the NYU Review of Law and Social Change, and where she was awarded the Vanderbilt Medal for Outstanding Contributions to the law school. She has been with the Firm for more than ten years and has been a member in good standing of the New York Bar since 2005 and New Jersey since 2018. She has focused her practice on plaintiffs' employment law for more than 15 years, and currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers Association.

Ms. Morales is an associate at the firm. She earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

Mr. Cabrera was an associate at the Firm. He earned his B.A from University of California, Berkeley in 2007 and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

Mr. Trinidad-Lira was an associate at the Firm, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. During his time at the Firm, Mr. Trinidad Lira has focused his practice on employment law since joining the firm in August 2022. Mr. Trinidad Lira was admitted to practice in New Jersey in 2022 and New York in 2023.

Ms. Ueoka was a law clerk at the firm. She earned her B.A. from Hunter College in 2016 and her J.D. from Rutgers Law School in 2021. Ms. Ueoka focused her practice on employment law while at the firm.

The $41,457.00 fee sought fee sought by Plaintiffs' counsel is less than Plaintiffs' counsel's "lodestar" amount of $49,457.50 and is therefore reasonable. As set forth herein, Plaintiffs' counsel negotiated a favorable settlement for Plaintiffs, in which Plaintiffs recovered a substantial portion of their alleged unpaid wages and will avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiffs ultimately prevailed on their claims, attempting to enforce a judgment against Defendants.

Accordingly, we respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Honorable Colleen McMahon
January 17, 2025
Page 6

Respectfully submitted,

*/s/Katherine Morales*
Katherine Morales
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
T: (212) 460-0047
kymorales@katzmelinger.com
*Attorneys for Plaintiff*

*/s/ Jeffrey S. Ettenger*
Jeffrey S. Ettenger
SCHWARTZ ETTENGER, PLLC
445 Broadhollow Road, Suite 205
Melville, NY 11747
T: 631-777-2401
jse@selawny.com
*Attorneys for Defendants*